Plummer et al. *v.* Wilson, Appellant.

Argued January 20, 1936. Before KEPHART, C. J., MAXEY, DREW, LINN and BARNES, JJ.

*H. C. Hubler,* with him *John R. Wilson,* for appellant.

*John H. Price* and *Cole B. Price,* for appellees, were not heard.

OPINION BY MR. JUSTICE BARNES, May 25, 1936:

This is an action in assumpsit brought by the owners of certain coal lands in Lackawanna County against George H. Wilson, upon a sealed instrument whereby he guaranteed the prompt payment of all rents and royalties due the plaintiffs under a lease of these lands to the Wilson Coal Company, a corporation, of which defend-

ant was president. The lease granted the right to mine and remove the coal under these lands, the lessee to pay a semimonthly rent or royalty for each ton of coal mined and removed therefrom. The original affidavit of defense was adjudged insufficient and leave was granted to amend it. The amended affidavit of defense subsequently filed was also held to be insufficient, and the court below entered judgment for plaintiffs for the full amount of their claim, whereupon the defendant appealed.

The statement of claim alleges that on September 3, 1931, the defendant, in consideration of the delivery of the lease to his company, executed and delivered to plaintiffs his personal guaranty under seal for the prompt payment of the rent reserved and the performance of the covenants of the lease.[1]

The lessee defaulted in the payment of rentals due February 15, 1933, and defaults continued until June 30, 1934. The plaintiffs entered judgment in ejectment on the lease on August 16, 1934, and by virtue thereof recovered possession of the leased premises. Under a landlord's warrant of distress the goods and chattels of the lessee on the property were sold on August 31, 1934, for fifty dollars, which was insufficient to pay the costs and expenses of the sale. The arrearages due under the lease according to the statement of claim amount to $7,-301.08 for which sum plaintiffs claim defendant is liable under his guaranty of September 3, 1931.

Defendant, in his amended affidavit of defense, admits the execution of the contract, the default under the lease, the ejectment of the lessee, and the sale of the lessee's

---

[1] The guaranty reads as follows: "I hereby, for myself, my heirs, representatives and assigns, in consideration of the making of the foregoing written lease between Emma A. Plummer et al., Lessors, and The Wilson Coal Company, Lessee, of even date herewith, guarantee the prompt payment of the rent reserved and the performance of the other obligations assumed and covenants made therein by the Lessee."

property under the landlord's warrant. By way of "Set-off, Counterclaim and New Matter," he avers that on April 18, 1933, the lessee assigned to plaintiffs as collateral for the payment of rentals then due the amount of $5,191.66, being a portion of a debt due and owing to lessee from another corporation named the Flagg Coal Company. He asserts that the action of the plaintiffs, in instituting the proceeding in ejectment upon the lease by which possession of the demised premises was recovered, terminated the lease and ended his liability to plaintiffs. Defendant maintains that he is at least entitled to a credit of $4,000 upon the amount claimed, this sum representing the fair value of certain trackage and equipment of the lessee sold at constable's sale under the landlord's warrant, and purchased by plaintiffs for the alleged grossly inadequate sum of fifty dollars. The court below held that none of these averments was sufficient to prevent judgment.

Under the Act of July 24, 1913, P. L. 971, a written agreement made by one person to answer for the default of another subjects such person to the liabilities of suretyship unless the agreement contains in substance the words "this is not intended to be a contract of suretyship." The agreement executed by the defendant does not have this provision. Hence it must be regarded as a suretyship contract. We have often said that it is a fundamental incident of suretyship that upon default a surety and his principal are both primarily liable upon the original undertaking (*Reigart v. White,* 52 Pa. 438; *Homewood Peoples Bank v. Hastings,* 263 Pa. 260; *Mechanics Tr. Co. v. Fid. & Cas. Co.,* 304 Pa. 526) ; but that in the case of an uncompensated surety any material variation of the principal's contract without the surety's consent releases him, as for example, by an agreement to extend the time of payment: *Henderson v. Ardery,* 36 Pa. 449; *Bensinger v. Wren,* 100 Pa. 500; *Jacob Sall B. & L. Assn. v. Heller,* 314 Pa. 237. The rule is not the same where the surety is a corporation engaged in the

business of suretyship for profit; in that situation the surety is released only by a departure from the terms of the contract which is material and prejudicial to its rights: *Phillips v. Amer. Liability & Surety Co.*, 309 Pa. 1, and cases there cited; *Chapman v. Hoage*, 296 U. S. 526. However, forbearance on the part of the creditor, and delay in enforcing his rights do not constitute such an extension of time to the principal debtor as will release the surety: *Miller v. Stem*, 2 Pa. 286; *Brubaker v. Okeson*, 36 Pa. 519; *Schroyer v. Thompson*, 262 Pa. 282. As we pointed out in our recent opinion in *Germantown Tr. Co. v. Emhardt*, 321 Pa. 561, mere forbearance does not extend the principal obligation nor constitute a bar to the bringing of suit upon it at any time, and the undertaking of the surety is therefore not varied.

The foregoing principles must be applied in determining the sufficiency of the defenses relied upon in the affidavit. Defendant guaranteed the "prompt" payment of the rent reserved. He contends that he was released when plaintiffs failed to insist upon "prompt" payment and allowed delinquent rentals to accumulate for over a year before bringing suit. It is true that under the lease plaintiffs were entitled to proceed against the lessee upon default in any semimonthly installment of rent, but we find nothing in the lease which required them to do so. It seems to us the failure of plaintiffs to enforce their demands for rent before August, 1934, was merely forbearance upon their part, and therefore did not have the effect of releasing defendant as surety upon the lease. See *Miller v. Keller*, 1 W. N. C. 27.

Defendant further contends that a contract to extend the time for payment of rent is to be implied from the acceptance by plaintiffs of the assignment of moneys due from the Flagg Coal Company, and that, by this variance of the original obligation, plaintiffs lost their right of action against him. While, as we have stated above, a contract to extend the time of payment would release the surety, yet we have repeatedly held that the mere ac-

ceptance of additional security for a debt raises no implication of an extension of the time for payment of the original claim: *Shaw & Leigh v. First A. R. Presbyterian Church,* 39 Pa. 226; *Buck v. Wilson,* 113 Pa. 423; *United States v. Hegeman,* 204 Pa. 438; *Easton S. D. v. Contl. Cas. Co.,* 304 Pa. 67. In the present case there is nothing in the record to indicate that the giving of the additional collateral was consideration for an extension of time to the lessee, or that it was anything more than an added security to the plaintiffs for the payment of the rent. We find no merit in these contentions. The original undertaking of the lessee was not varied so as to entitle the defendant to a release from his written obligation to be answerable to plaintiffs for the payment of the rent reserved under the lease. He will, of course, be entitled by subrogation to all of plaintiffs' rights in the security which they hold upon his payment of their claim, and to an assignment of the collateral now in their possession: *Neff's App.,* 9 W. & S. 36; *Musgrave v. Dickson,* 172 Pa. 629; *Park Bank v. Kleman,* 278 Pa. 165; *Beaver Tr. Co. v. Morgan,* 259 Pa. 567.[2]

We find no merit in the contention of defendant that his liability as surety was terminated when plaintiffs recovered possession of the demised premises. It will be noted that no rent is claimed beyond the date when plaintiffs repossessed the premises. Therefore the liability sought herein to be enforced against defendant is only for the rent already accrued. Such liability came into existence with each default in the payment of rent and continued in effect so long as any of the rent accrued remained unpaid: *King v. Blackmore,* 72 Pa. 347; see *Croydon C. G. & C. Co. v. Dickinson,* 36 L. T. Rep. 135. Even if defendant's contention that the ejectment terminated the lease were sustained, it could not release him

[2] The amount of the judgment is $7,301.08; the account of the Flagg Coal Company assigned as collateral is $5,191.66, of which only $259.58 was collected by plaintiffs; to the balance of this account, defendant will be subrogated on payment of the judgment.

from his obligation as surety to pay the rent that had actually accrued while the lessee was in possession of the premises. See *Pier v. Carr,* 69 Pa. 326; *Rafferty v. Klein,* 256 Pa. 481; *Hochman v. Kuebler,* 53 Pa. Superior Ct. 481.

Defendant further contends that if he was not released from all liability under the guaranty, he is at least entitled to a set-off of $4,000 against plaintiffs' claim. He bases his contention upon the principle that a creditor must exercise good faith and protect for the benefit of a surety for the debt any property which he may hold as collateral security. He argues that the price of fifty dollars received at the sale on the landlord's warrant was grossly inadequate, and that the plaintiffs should credit upon the debt the sum of $4,000 as the fair value of the property sold. This contention must fail because the affidavit of defense does not set forth sufficient facts to support it. The bare allegation that the property sold,—indefinitely described as "some two miles of mine track, a large number of mules, and all other mining equipment"—was "valued at approximately Four Thousand Dollars," is insufficient to raise an issue of fact. The presumption is that at a public sale the price received is the highest and best obtainable. The unsupported statement that the value of the property sold is greater than the price received at the sale does not disclose any facts upon which a court could find either that the sale was not properly conducted, or that the price obtained was not then the fair market value. It has been repeatedly ruled by this court that inadequacy of price is not alone sufficient to invalidate a public sale under process of law: *Carsons Sale,* 6 Watts 140; *Cake v. Cake,* 156 Pa. 47; *Felton v. Felton,* 175 Pa. 44; *McKee v. Kerr,* 192 Pa. 164; *Light v. Zeller,* 195 Pa. 315; *Armstrong Co. Tr. Co. v. Booser,* 216 Pa. 242; *Lyle v. Armstrong,* 235 Pa. 224. A public sale, regularly proceeded with, is not to be upset by any such vague averment as defendant makes in his affidavit. There are no

specific facts alleged by defendant in this connection upon which a finding that the sale was improper could be based. Such an indefinite averment partakes of the nature of a general denial, which, it is well settled, is insufficient: *Practice Act* of May 14, 1915, P. L. 483, sections 6 and 8; *Buehler v. U. S. Fashion Plate Co.,* 269 Pa. 428.

The judgment is affirmed.